United States District Court
for the
Southern District of Florida

| Erma Barmapov-Segev, Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 19-23742-Civ-Scola |
| City of Miami and others, | ) | |
| Defendants. | ) | |

## Omnibus Order on Defendants' Motions to Dismiss

This matter is before the Court on Defendant City of Miami's motion to dismiss (ECF No. 4) and Defendant Jem Martinez's partial motion to dismiss the Plaintiff's complaint. (ECF No. 9.) The Plaintiff filed responses (ECF Nos. 14, 16) and the Defendants replied (ECF No. 17, 21.) Having considered the parties' briefs, the relevant caselaw, and the record, the Court **grants in part and denies in part** the Defendants' motions.

### I. Background

On December 31, 2017, Plaintiff Barmapov-Segev was in Miami celebrating New Year's Eve with a friend. (ECF No. 1-3 at ¶ 15.) The Plaintiff was driving northbound at the intersection of Biscayne Boulevard and SE 3rd Street. (*Id.* at ¶ 16.) Defendant Martinez, an off-duty Public Service Aide and employee of the City of Miami, was directing traffic at the intersection. (*Id.*) The Plaintiff asked the Defendant if she could pass because she was running late to a dinner reservation. (*Id.* at ¶ 17.) Martinez struck the Plaintiff's vehicle with her hand and told the Plaintiff to "fuck off." (*Id.*) The Plaintiff proceeded safely past Defendant Martinez and drove for about thirty feet. (*Id.* at ¶¶ 17-18.) The Plaintiff was then stopped by Defendant Dell Amico, another safety officer, on foot. Dell Amico stopped the Plaintiff because Martinez told him that she had to jump out of the way of the vehicle because the Plaintiff tried to strike her with the vehicle. (*Id.* at ¶ 18.)

Defendant Dell Amico detained the Plaintiff on the side of the road from 10:30 p.m. until approximately 11:45 p.m., when she was handcuffed and arrested. (*Id.* at ¶ 21.) The Plaintiff was handcuffed and left in the car until approximately 2:00 a.m. (*Id.* at ¶ 21.) The Plaintiff was charged with aggravated assault with a deadly weapon and failure to obey a police officer. (*Id.* at ¶ 23.) The State eventually *nolle prossed* all charges filed against the Plaintiff. (*Id.* at 25.)

The Plaintiff filed a ten count complaint against the City and the various officers involved with her arrest for false arrest, false imprisonment, unlawful search and seizure, defamation, malicious prosecution, battery, intentional infliction of emotional distress, and various counts of negligence. The City moves to dismiss the Plaintiff's complaint in its entirety and Defendant Martinez filed a partial motion to dismiss.

## II. <u>Legal Standard</u>

Federal Rule of Civil Procedure 8(a) requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984). For purposes of Rule 12(b)(6), a court generally may not look beyond the pleadings, which includes any information attached to a complaint. *U.S. ex. Rel. Osheroff v. Humana, Inc.,* 776 F.3d 805, 811 (11th Cir. 2015) (internal citations omitted).

## III. <u>Analysis</u>

### A. The City's Motion to Dismiss Counts I, II, V, VI, and IX

The Defendant moves to dismiss Counts I, II, V, VI, and IX based on sovereign immunity under Fla. Stat. § 768.28 because the complaint alleges that they were committed with malicious intent. (ECF No. 4 at 4-5.) The Plaintiff's response does not address the Defendant's argument regarding sovereign immunity under Florida law. (ECF No. 14.) Instead, the Plaintiff argues that her count for malicious prosecution (Count V) is a constitutional claim that may be

brought under § 1983. (*Id.* at 2.) The only count in Plaintiff's complaint that invokes the Constitution is Count III. Nowhere in the complaint does the Plaintiff cite to § 1983. Instead, Counts I, II, V, VI, and IX each refer to "Florida Statutes and the laws of the State of Florida." (ECF No. 1-3 at ¶¶ 38, 47, 77, 84, 109.) Accordingly, the Court will construe Counts I, II, V, VI, and IX as Florida common law claims for false arrest, false imprisonment, malicious prosecution, battery, and intentional infliction of emotional distress, respectively.

> Florida's sovereign immunity statute provides the following:
>> The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee or agent, committed while acting outside the course and scope of her or his employment or committed in bad faith or <u>with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.</u>

Fla. Stat. § 768.28(9)(a) (emphasis added). "Florida law thus provides that the State and its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed in a manner exhibiting wanton and willfully disregard of human rights, safety and property." *Gregory v. Miami-Dade Cty.,* 719 F. App'x 859, 873 (11th Cir. 2017.) This does not mean, however, that the sovereign immunity statute bars all claims for battery or false arrest. "While battery is an intentional tort, the City may be held liable for an employee's intentional act(s) as long as the employee is acting within the course and scope of his employment and the act or omission is not committed in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of the plaintiff's rights." *Id.*

Here, the Plaintiff's allegations in Count I for false arrest do not allege that the Defendant officers acted in bad faith or with malicious intent. (*See* ECF No. 1-3 at 11-12.) The Plaintiff alleges that she was arrested based on the false accusations of Defendant Martinez and Defendants Dell Amico, Williams, and Gonzalez failed to investigate Defendant Martinez's false allegations. (*Id.* at ¶ 34.) There is no dispute between the parties that the officers were acting within the scope of their employment. Accordingly, the Court declines to dismiss Count I as to the City.

With regard to Counts II, V, VI, and IX, the Plaintiff's complaint contains allegations of intentional and malicious conduct. For example, Count II for false imprisonment alleges that Defendant Martinez "maliciously and intentionally lied when reporting" Plaintiff's conduct to the Miami Dade Police Department. (ECF No. 1-3 at ¶ 42.) Count V for malicious prosecution alleges that Defendant Martinez "knowingly, maliciously, and intentionally" made a false report

regarding the Plaintiff so she would be arrested. (*Id.* at ¶ 71.) This was done "with ill will or evil intent." (*Id.*) Count VI for battery alleges that Defendant Martinez "acted with malice and her intentional, malicious actions, omissions, and false statements" resulted in "non-consensual touching of Plaintiff." (*Id.* at ¶ 81.) Lastly, Count IX for intentional infliction of emotional distress also alleges that Defendant's actions were "deliberate and reckless, and amount to outrageous conduct that is atrocious and intolerable in a civilized society." (*Id.* at ¶ 107.) Based on these allegations of malicious and willful disregard for the Plaintiff's rights, § 768.28(9)(a) immunity applies. *See Gregory*, 719 F. App'x at 873. Accordingly, the Court finds that the City is immune from suit and dismisses Counts II, V, VI, and IX as to the City.

### B. Defendant Martinez's Motion to Dismiss Count II

Defendant Martinez moves to dismiss Counts II for false imprisonment as duplicative of Count I for false arrest. "Generally, false arrest and false imprisonment are different labels for the same cause of action." *Smart v. City of Miami*, 107 F. Supp. 3d 1271, 1280 (S.D. Fla. 2015) (Cooke, J.) (citations and quotations omitted). Courts often find that false imprisonment is duplicative of false arrest where the "arrest and subsequent imprisonment [are] coterminous. That is, an individual was detained for a period of time that was commensurate with the arrest for a particular offense. In such a circumstance, probable cause to believe the individual committed the offense would render the arrest, and the concomitant period of detention (*i.e*, the imprisonment) flowing directly from the arrest, lawful." *Id.* 1280-81. On the other hand, there are some circumstances in which the two claims are not treated identically. In *Mathis v. Coats,* 24 So. 3d 1284, 1287 (Fla. 2d DCA 2010), the plaintiff was arrested one afternoon for driving under the influence. She was taken to Central Breath Testing (CBT), given a number of sobriety tests, and taken to the booking area. *Id.* at 1287. She was released from jail at noon the next day. *Id.* The appellate court affirmed the trial court's grant of summary judgment on the false arrest claim because there was probable cause to arrest at the time of the traffic stop. The court, however, reversed on the false imprisonment claim because the plaintiff "may be able to demonstrate that probable cause evaporated at some point after she was transported to CBT and jailed." *Id.* at 1290. The length of the arrest was not commensurate with the offense at issue.

Here, the Plaintiff was arrested sometime before midnight and released at 8:47 a.m. (ECF No. 1-3 at ¶ 23.) The Plaintiff alleges that she was "falsely imprisoned, detained, and otherwise arrested for approximately 10 hours and 37 minutes." (*Id.*) The allegations in Counts I and II are largely the same: the Plaintiff was unlawfully arrested and held for an unreasonable amount of time. (*Id.* at ¶¶

36, 43.) In this scenario, a finding of probable cause would render the arrest and the "concomitant period of detention" lawful. *Smart*, 107 F. Supp. 3d at 1281. Because the two are so closely related and she was "detained for a period of time that was commensurate with the arrest," Count II is duplicative of Count I. *See id.* at 1280-81.

### C. The City's Motion to Dismiss Count III

Count III asserts a claim for unlawful search and seizure under the Fourth Amendment of the Constitution. (ECF No. 1-3 at 15.) The Court assumes, as the Defendant has, that the Plaintiff meant to invoke 42 U.S.C. § 1983. Municipalities and other local government entities are subject to liability under § 1983 and may be sued directly for relief where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A municipality or other local government entity "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691 (emphasis in original). Only if the alleged constitutional violations resulted from a custom, policy, or practice of a local government entity may that entity be held liable. *Id.* at 694; *Wideman v. Shallowford Cmty. Hosp., Inc.*, 826 F.2d 1030, 1032 (11th Cir. 1987); *see also Farred v. Hicks*, 915 F.2d 1530, 1532–33 (11th Cir. 1990) ("Governmental entities may be held liable under section 1983 when a governmental 'policy or custom' is the 'moving force' behind the constitutional deprivation.") (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

A policy or custom "is established by showing a persistent and widespread practice and an entity's actual or constructive knowledge of such customs, though the custom need not receive formal approval." *German v. Broward Cty. Sheriff's Office*, 315 F. App'x 773, 776 (11th Cir. 2009) (citing *Depew v. City of St, Mary's, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986)). The practice or custom must be "so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker." *Church v. City of Huntsville*, 30 F.3d 1332, 1343 (11th Cir. 1994). For example, if a municipality's rules and regulations for the operation of its police department are repeatedly violated and the municipality has knowledge of the conduct but fails to rectify the situation, it may be liable. *Depew*, 787 F.2d at 1499 ("The continued failure of the [municipality] to prevent known constitutional violations by its police force is precisely the type of informal policy or custom that is actionable under section 1983."). However, "[n]ormally random acts or isolated incidents are insufficient to establish a custom or policy." *Id.*

Here, the Plaintiff fails to establish a pattern or practice of unlawful searches and seizures. The Plaintiff attempts to establish a custom, policy, or practice by the City of Miami Police Department by listing statistics about the City's excessive use of force. (ECF No. 1-3 at 19.) For example, "it has been reported in a 2014 Miami New Times article that Miami Police have used their Tasers more than 3000 times and at least 11 men have died." (*Id.* at ¶ 58(ii).) The Plaintiff argues that she "included evidence of Defendant City's pattern and practice and/or custom and policy of using excessive force as part of an argument that Defendant City proliferates and condones the violations of citizens constitutional rights." (ECF No. 14 at 11.) She included evidence showing that the City has "a pattern and practice and/or custom and policy of falsifying evidence and planting evidence as alleged in this case, of failing to accept and/or make complaints against officers, of asking leading questions during investigations, and has a pattern and practice of violating citizen's rights under the Fourth Amendment." (*Id.*) Notably, the Plaintiff does not argue that she has provided facts to establish a policy or custom of illegal searches and seizures. The Plaintiff's claim is for unlawful seizure based on her arrest. This is unrelated to the City's alleged problems with excessive force or other Fourth Amendment violations. Accordingly, the Court dismisses Count III as to the City.

### D. Defendant Martinez's Motion to Dismiss Count III

The Defendant moves to dismiss Count III arguing that the Plaintiff has not asserted enough facts to show that Martinez was acting under color of state law. (ECF No 9 at 5.) The Plaintiff responds by arguing that Defendant Martinez was a Public Service Aide directing traffic and thus acting under color of state law. (ECF No. 16 at 11.) Upon careful review, the Court agrees with the Plaintiff.

Section 1983 does not federalize all torts or other deprivations of rights committed by a person who is a law enforcement officer or other government agent. Instead, the statute covers only those deprivations committed under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." *Butler v. Sheriff of Palm Beach Cty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). "A defendant acts under color of state law when she deprives the plaintiff of a right through the exercise of authority that she has by virtue of her government office or position. The dispositive question is whether the defendant was exercising the power she possessed based on state authority or was acting only as a private individual." *Id.*

Here, the complaint alleges that Defendant Martinez was a public safety officer directing traffic. (ECF No. 1-3 at ¶¶ 16-17.) The Plaintiff asked Martinez if she could pass through traffic and Martinez hit the Plaintiff's car and cursed at her. (*Id.* at ¶ 17.) Martinez then communicated to another officer, Dell Amico,

what occurred and Dell Amico stopped the Plaintiff. (*Id.* at ¶ 18.) Construing the complaint's allegations in the light most favorable to the Plaintiff, it appears Martinez was a public safety officer directing traffic on a busy street during New Year's Eve when the altercation took place. There is no indication that the Plaintiff believed she was asking a civilian if she could pass or confused Martinez for a civilian crossing the street. Accordingly, Defendant Martinez's motion to dismiss Count III is denied.

### E. Defendant City and Defendant Martinez's Motions to Dismiss Count IV

Count IV of the Plaintiff's complaint asserts a claim for defamation based on the "defamatory statements" made by Defendant Martinez that led to Plaintiff's arrest. (ECF No. 103 at 21-22.) The Defendants both move to dismiss this claim arguing that they are immune from suit because Defendant Martinez was acting within the scope of her authority. (ECF No. 4 at 6.) The Plaintiff argues that Defendant Martinez was not acting within the scope of her authority because she is a public safety officer with no enforcement powers. (ECF No. 16 at 8.) Therefore, when she reported to Defendant Dell Amico that she was almost struck by Plaintiff's car, she was acting outside the scope of her authority. Upon review, the Court agrees with the Defendants.

"In Florida, public officials who make statements within the scope of their duties are absolutely immune from suit for defamation." *Steppe v. City of Miami,* Case No. 16-24999, 2017 U.S. Dist. LEXIS 119161, at *19 (S.D. Fla. July 27, 2017) (McAliley, Mag. J.). Here, "[t]here is no evidence that the [ ] officers made any statements outside the scope of their official duties." *Id.* at *19-*20. Martinez, acting as a public safety officer, was directing traffic, did not let the Plaintiff pass, and after Plaintiff passed, Martinez reported to her fellow officers that the Plaintiff tried to hit her with her car. All of these functions are within the scope of her duties. *See Meyer v. City of Gainesville*, No. 15-cv-185, 2016 WL 674659, at *7 (N.D. Fla. Jan. 7, 2016) (pulling over plaintiff, conversing with fellow officer on the radio, and arresting plaintiff were within scope of officer's duties). Accordingly, the City and Officer Martinez are entitled to immunity and the Court dismisses Count IV.

### F. Defendant Martinez's Motion to Dismiss Count VI for Battery

Defendant Martinez moves to dismiss Count VI for battery arguing that Defendant Martinez did not actually arrest, handcuff, or detain Plaintiff. Therefore, Martinez was not involved in the Plaintiff's alleged battery. (ECF No. 9 at 7.) In response, the Plaintiff asserts that Defendant Martinez's conduct indirectly resulted in the Plaintiff's battery. (ECF No. 16 at 13.)

"Under Florida law, the tort of battery requires the plaintiff to prove the following elements: (1) the intent to cause a harmful or offensive contact with another person; and (2) an offensive contact that directly or *indirectly* results." *Rubio v. Lopez*, 445 F. App'x 170, 175 (11th Cir. 2011) (emphasis added). The parties agree that Defendant Martinez did not touch the Plaintiff. The question is whether the fact that Defendant Martinez's actions *resulted in* the alleged battery is sufficient to sustain a cause of action against Defendant Martinez. Neither party cites a case on the issue of an indirect battery. The Defendant does not even address the argument in her Reply. (ECF No. 21.) The Court will not serve as counsel's law clerk and make the arguments that should have been developed by each side. *See Fed. Ins. Co. v. Cty. Of Westchester,* 921 F. Supp. 1136, 1138 (S.D.N.Y. 1996) ("Under the adversary system, it is counsel's responsibility to explain why these points have legal merit; the Court does not serve as counsel's law clerk."). Accordingly, the motion to dismiss Count VI is denied.

### G. Count VII

Count VII is a shotgun pleading. Count VII purports to assert claims for "negligence and/or negligent hiring, training, supervision, and retention." (ECF No. 1-3 at 28.) A shotgun pleading "commits the sin of not separating into a different count each cause of action or claim for relief." *Gharfeh v. Carnival Corp.*, 309 F. Supp. 3d 1317, 1322 (S.D. Fla. April 6, 2018) (Goodman, J.). The Plaintiff's claims of negligent hiring, training, supervision, and retention are each "legally distinct claims requiring separate analyses." *Nieves v. City of Hialeah,* No. 17-cv-22726, 2018 U.S. Dist. LEXIS 19445, at *14 (S.D. Fla. Feb. 3, 2018) (Moore, J.). Although the Court may dismiss on these grounds, the Court will address each claim in turn.

To state a claim for negligent hiring or retention, a plaintiff must allege that "(1) the agent/employee/contractor was incompetent or unfit to perform the work; (2) the employer knew or reasonably should have known of the particular incompetence or unfitness; and (3) the incompetence or unfitness was a proximate cause of the plaintiff's injury." *Witover v. Celebrity Cruises, Inc.*, 161 F. Supp. 3d 1139, 1148 (S.D. Fla. 2016) (Lenard, J.) (citations and quotations omitted). To satisfy the second element of these claims, "a plaintiff must allege facts showing that the employer was put on notice of the harmful propensities of the agent/employee/contractor." *Id.* (citations and quotations omitted). Negligent hiring occurs when the employer knew or should have known of the employee's unfitness before the employee was hired. *Id.* The issue of liability "primarily focuses upon the adequacy of the employer's pre-employment investigation into the employee's background." *Id.* Negligent retention occurs

"after employment begins, where the employer knows or should know of the employee's unfitness and fails to take further action such as investigating, discharge or reassignment." *Id.* (citations and quotations omitted).

Other than in the title of Count VII, the Plaintiff's complaint does not allege any facts related to her claim of negligent hiring, much less evidence that the City was put on notice of the officers' incompetence or unfitness. The complaint also fails to put forth any allegations that the City should have known of the Defendant officer's unfitness to support her negligent retention claim. The same analysis applies to the Plaintiff's claim of negligent supervision. "Because [Plaintiff] has not brought forth any evidence that [Defendant City] had notice that either of the officers had 'harmful propensities' or was otherwise unfit to serve as a police officer, [s]he cannot state a claim for negligent supervision." *Mercado v. City of Orlando,* 406 F.3d 1152, 1162 (11th Cir. 2005).

The Plaintiff's claim for negligent training also fails. The Plaintiff challenges the City's alleged failure to train officers regarding the use of unreasonable search and seizure and the requirement to treat females equally to other citizens. (ECF No. 1-3 at ¶ 89.) "A city's decision regarding how to train its officers and what subject matter to include in the training is clearly an exercise of governmental discretion regarding fundamental questions of policy and planning." *Lewis v. City of St. Petersburg,* 260 F.3d 1260, 1266 (11th Cir. 2001). These training decisions are "discretionary governmental functions immune from tort liability." *Id.* Because the Plaintiff challenges basic policy decisions made by the City, the "discretionary function exception to the waiver of sovereign immunity applies and her claim is barred." *Id.* Accordingly, the Court dismisses Count VII.

### H. Count VIII

Count VIII is titled "Negligence, Negligent Supervision, and Failure to Conduct a Fair and Impartial Investigation." (ECF No. 13 at 30-31.) The Court has already addressed the Plaintiff's claim for negligent supervision. The remaining allegations in Count VIII are for negligent investigation. Florida law, however, does not recognize a cause of action for negligent investigation. *See Olson v. Dier,* 10-cv-1771, 2011 WL 4905640, at *2 (M.D. Fla. Oct. 13, 2011) (applying Florida law). Accordingly, the Court dismisses Count VIII.

### I. Defendant Martinez's Motion to Dismiss Count IX

The Defendant moves to dismiss Count IX for intentional infliction of emotional distress arguing that, although Martinez's conduct may be offensive, it does not rise to the level of supporting a claim for intentional infliction of emotional distress. (ECF No. 9 at 8.) In response, the Plaintiff asserts that

Martinez's false accusations, which lead to the Plaintiff's arrest, are sufficient. Upon review, the Court agrees with the Plaintiff.

To state a claim for intentional infliction of emotional distress under Florida law, a plaintiff must allege "(1) deliberate or reckless infliction of mental suffering, (2) outrageous conduct that (3) caused the emotional distress, and (4) that the distress was severe." *Tillman v. Orange Cty*, 519 F. App'x 632, 636 (11th Cir. 2013). In *Tillman,* the Eleventh Circuit held that "police officers falsif[ying] charging documents in order to convict a man of a nonexistent crime[,] is the type of extreme conduct considered to be intolerable in a civilized society[.]" *Id.* at 637. According to the allegations in Plaintiff's complaint, Martinez made false accusations against the Plaintiff to "punish" her, which led to her arrest and malicious prosecution. (ECF No. 1-3 at ¶¶ 27-28.) Taking these allegations in the light most favorable to the Plaintiff, the Court declines to dismiss Count IX against Defendant Martinez.

### J. The Parties' Motions to Dismiss Count X

Count X of Plaintiff's complaint asserts a claim for negligent infliction of emotional distress. The Defendant moves to dismiss Count X arguing that the Plaintiff's claim of negligent infliction of emotional distress is based on the alleged false arrest and malicious prosecution. The Plaintiff cannot sustain a claim of negligence on the basis of intentional torts. The Plaintiff does not respond to the Defendant's argument in her response.

"[N]egligence stemming from an arrest and/or imprisonment is subsumed by the tort of false arrest/false imprisonment." *Hernandez v. Metro-Dade Cty.*, 992 F. Supp. 1365, 1369 (S.D. Fla. 1997) (King, J.). Moreover, the negligent commission of an intentional tort is an "oxymoron." *See Secondo v. Campbell,* 327 F. App'x 126, 131 (11th Cir. 2009) ("Florida courts have conclusively established that a cause of action for the negligent use of excessive force is an oxymoron."). Here, the Plaintiff alleges that she suffered emotional distress when the City "falsely accus[ed]" her of misconduct and "initiate[d] malicious prosecution" against her. (ECF No. 1-3 at ¶ 113.) Because these claims form part of the malicious prosecution and false arrest claims, Count X must fail. *See Bickel v. City of Coral Springs,* 17-cv-60606, 2017 WL 2439078, at *5 (S.D. Fla. June 6, 2017) (Bloom, J.) (explaining that a "separate negligence claim based upon a distinct act of negligent may be brought against a police officer . . . only where the negligence component pertains to something other than the actual application of force during the course of the arrest.").

Defendant Martinez argues that she is allowed to plead claims, such as intentional infliction of emotional distress, in the alternative. (ECF No. 16 at 16.) This argument misses the mark. The Plaintiff's claims for battery, false arrest,

and malicious prosecution are intentional torts. As explained above, an intentional tort cannot form the basis of a negligence cause of action. Therefore, Count X fails and cannot be pleaded as an alternative to the intentional torts asserted by the Plaintiff.

## IV.    Conclusion

Based on the foregoing, the Court **grants in part and denies** in part the Defendant City's motion to dismiss. (**ECF No. 4**.) The Court **denies** the Defendant's motion to dismiss Count I. The Court **grants** the Defendant's motion to dismiss Counts II, III, IV, V, VI, VII, VIII, IX, and X. Count VIII is dismissed with prejudice. All other counts are dismissed as to the City without prejudice.

The Court also **grants in part and denies** in part Defendant Martinez's partial motion to dismiss. (**ECF No. 9.**) The Court dismisses Counts II, IV, and X as to Defendant Martinez. The Court denies the Defendant's motion to dismiss Counts III, VI, and IX.

Currently pending before the Court are three additional motions to dismiss by Defendants Reyes, Williams, and Harrison. (ECF Nos. 10, 12, 27.) Instead of ruling on the two pending motions, which contain a number of the same arguments addressed above, the Court directs the Plaintiff to file an Amended Complaint on or before **December 4, 2019.**

**Done and ordered** at Miami, Florida, on November 19, 2019.

_____
Robert N. Scola, Jr.
United States District Judge